***********
The Full Commission reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner George Hall and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
The parties stipulated to the following: *Page 2 
1. The parties stipulate and agree that Plaintiff was employed by Defendant-Employer University of North Carolina at Greensboro (UNCG) in Greensboro, North Carolina from approximately June 30, 2003 to present.
2. The parties stipulate and agree that Defendant-Employer is self-insured and Corvel Corporation serves as its third-party administrator.
3. The parties are subject to the North Carolina Workers' Compensation Act.
4. The parties stipulate that Plaintiff suffered a left rotator cuff tear with positive impingement on the date of the alleged injury, March 25, 2009.
5. The parties stipulate and agree that the average weekly wage is $709.39, and yields a compensation rate for the date of disability of $473.16.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 61 year old high school graduate who took one year of automotive mechanics at Southwestern Tech., completed an electronic communications course through the National Radio Institute, and holds a license as a second class power engineer.
2. Plaintiff's work experience includes 23 years of employment with Duke Power Company at its Belews Creek facility as a Power Plant Mechanic, eight years of employment with Defendant as a Boiler Operator, and part-time employment with Hamrick's as a loss prevention officer.
3. Plaintiff worked for Defendant on March 25, 2009, the date of the injury that is the subject of this claim, and continues to work full-time for Defendant and part-time with Hamrick's. *Page 3 
4. Plaintiff works as a Boiler Operator in an older facility owned by Defendant. It is a large three level facility which includes a basement operating floor, a second floor for pressure reducing valves (PRVs), and a third level. On a typical work day 40% of his time is spent performing pre-shift inspections and the remaining 60% is spent in a control room monitoring plant operations on screens.
5. Plaintiff's pre-shift inspection consists of walking through the plant to perform visual inspections on the operating equipment, including four boilers, two air compressors, an aerator tank, and a heat exchanger. Visual inspections are performed to look for abnormal conditions that may have occurred or existed prior to his shift. The position can physically involve opening and closing valves to purge air, steam, or water through lines.
6. The majority of Plaintiff's work as a Boiler Operator is spent in the control room where he stands and sits in observation of automated controls on a computer monitor screen in order to monitor plant operations.
7. On March 25, 2009, Plaintiff was required to use a ratchet wrench to remove lug nuts, panels, and pipes from the inside of a boiler to prepare the boiler for an insurance inspection.
8. Defendant has four boilers that must be inspected annually; one of which has panels that are not removable. Defendant employs four Boiler Operators that work alternating shifts. Preparing the boilers for inspection is a job task assigned at random depending on the operator on shift at the time the boilers need preparation. One of the four operators is too large physically to fit in the steam drums; therefore, this operator is unable to perform this task despite it being listed in his job description. *Page 4 
9. At the time of his injury, Plaintiff had performed the job task of preparing boilers for inspection, including the removal of panels internally, approximately four to six times total during his seven years of work with Defendant. Plaintiff's supervisor, Lester Rogers, agreed with that estimate.
10. On March 25, 2009, Plaintiff was the Boiler Operator on shift and thereby required to prepare Boiler Steam Drum Number 3 for annual inspection.
11. Each boiler is typically full of water and steam in order to perform its normal function and therefore is not accessible internally. The job of preparing a boiler for inspection first requires complete drainage of the boiler and time for the inside of the machinery to cool down.
12. After complete drainage and cooling, pipes and panels must be removed from the inside of the boiler for inspection by the Department of Labor Boiler Inspection Division.
13. Entry to the inside of the boiler is achieved through one of two 12 by 16 inch elliptical manways. The Number 3 Boiler Steam Drum is a closed steel pressure vessel measuring 42 inches inside in diameter with minimum clearance between internal components and vessels of approximately 30 inches.
14. Due to the 30 inches of clearance, Plaintiff was only able to maneuver in a lying position because the space was too confined to allow him to crawl.
15. Plaintiff testified at the hearing before the Deputy Commission that he had removed four panels and their accompanying lug nuts and that he was lying on his left side with his hand stretched over his head as far as he could reach, and was pulling on the bottom of the ratchet wrench to get the nut to turn. Plaintiff stated that he felt a sharp pain in his left shoulder as he was pulling on the ratchet wrench with both hands. *Page 5 
16. Plaintiff testified that he was unable to use the ratchet wrench in the normal way that he is accustomed to using it. Plaintiff normally positioned himself directly in front of the nut and operated the ratchet wrench in a twisting motion. On March 25, 2009, Plaintiff was forced to operate the ratchet wrench in an abnormal and unusual way due to the confined space of the steam drum and his inability to position himself directly in front of the nut which required removal.
17. Plaintiff testified that he used ratchet wrenches, approximately twice per month, but never in a lying down position. The panel removed by Plaintiff when he suffered his injury was particularly difficult to access as there was absolutely no way to position one's self directly in front of the nut that he was trying to remove.
18. Lester Rogers, Plaintiff's supervisor, believed Plaintiff's testimony was candid, honest, and truthful. He also stated that Plaintiff was an excellent employee who follows safety rules, has a good attitude, and generally is an exemplary employee.
19. When asked whether he would agree that Plaintiff spent less than ten minutes throughout his entire employment with Defendant in the position removing bolts from the last panel, Mr. Rogers replied, he wouldn't disagree with that and that 10 minutes would probably be overestimating that amount of time.
20. Mr. Rogers agreed that Plaintiff would not have prepared the boiler for inspection more than six times total during his employment with Defendant and described preparing a boiler for inspection as an infrequent operation.
21. Mr. Rogers did not dispute Plaintiff's testimony that preparing a boiler for inspection put him in an awkward position. He indicated that not everyone has to lie down and that he would have been able to reach it differently due to his arms being longer than Plaintiff's. *Page 6 
22. Mr. Rogers and Plaintiff jointly filled out an Accident/Injury/Illness Investigation on March 26, 2009. The report notes that "#3 Boiler Steam Drum is a confined space which makes it difficult to position oneself to a[n] ideal posture while removing boiler internals." Mr. Rogers additionally checked under Immediate Cause(s), the box for Hazardous Conditions and clarified at the hearing that he determined the cause of the injury to be the hazardous conditions in the confined space and that is it "a difficult position to get into and not everybody is supple enough to bend themselves around to get in a position to apply the best torque when they're loosening or tightening something."
23. Plaintiff received medical treatment on March 30, 2009 at The University of North Carolina Greensboro — Student Health Services. Plaintiff completed the intake form by stating that on March 25, 2009, he "felt a sharp pain in left shoulder. Pain has not gone away." The medical record indicates that Plaintiff's shoulder is tender to palpitation and reduced range of motion. Plaintiff continued to receive medical treatment through the Student Health Services through May 14, 2009, at which time Plaintiff was referred to Orthopaedic Specialists of Carolinas.
24. On May 27, 2009, Defendants completed a Form 61, denying that Plaintiff's injury "was not the result of an accident . . . was not the result of a specific traumatic incident . . . was not the result of a covered occupational disease."
25. On May 29, 2009, Plaintiff was treated by Dr. Frank J. Rowan of Guilford Orthopaedic and Sports Medicine Center. Dr. Rowan diagnosed Plaintiff with a "left shoulder full thickness rotator cuff tear with retraction" and ordered a left shoulder arthroscopic decompression. A July 16, 2009 medical record indicates that medical treatment was denied by workers' compensation insurance. *Page 7 
26. Plaintiff testified that he has had "nothing more than some anti-inflammatory medicine." Plaintiff further testified that he has not received rotator cuff repair surgery as was recommended by medical providers due to Defendant's denial of his workers' compensation claim and his inability to afford the surgery.
27. The Full Commission finds that Plaintiff sustained an injury by accident to his left shoulder when removing the last panel for inspection while lying awkwardly on his left side reaching the ratchet wrench as far as he could over his head, and in an abnormal and unusual manner in a confined space, pulled to loosen and remove the tight nut.
28. The Full Commission finds that as a result of the March 25, 2009 injury, Plaintiff suffered a full thickness tear of his left rotator cuff with mild subacromial impingement. Plaintiff notified his supervisor the same evening of the injury.
29. The Full Commission finds that Plaintiff did not miss any work as a result of this injury, continues to work for Defendant-Employer, is physically unable to prepare boilers for inspection at this time, and has not been asked to prepare boilers for inspection by his employer since March 25, 2009.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In a hearing before the Industrial Commission, the evidence which tends to support Plaintiff's claim should be considered in the light most favorable to him, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom.Adams v. AVX Corp., 349 N.C. 676, 509 S.E.2d 411 (1998);Doggett v. South Atlantic Warehouse Co.,212 N.C. 599, 194 S.E. 111 (1937); Hildebrand v. McDowellFurniture Co., *Page 8 212 N.C. 100, 193 S.E. 294 (1937).
2. The Workers' Compensation Act is required to be construed liberally to effectuate its purpose to provide compensation for injured workers. Its benefits should not be denied by a technical, narrow, or strict construction. Stevenson v. City of Durham,281 N.C. 300, 188 S.E.2d 281 (1972); Holloman v. City ofRaleigh, 273 N.C. 240, 159 S.E.2d 864 (1968).
3. Plaintiff sustained a compensable injury by accident arising out of and in the course of employment to his left shoulder while removing the last panel for inspection by lying in an awkward position on his left side and reaching the ratchet wrench as far as he could over his head in an abnormal and unusual manner in a confined space and pulling to loosen and remove the tight nut. N.C. Gen. Stat. § 97-2.
4. Plaintiff has missed no time from work as a result of his compensable injury and is not entitled to temporary total disability benefits at this time. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have Defendant authorize and pay for medical care as is reasonably required as a result of his compensable injury by accident that tends to effect a cure, give relief, or lessen Plaintiff's disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
6. Plaintiff is entitled to have Defendant reimburse him for any expenses incurred as a result of his compensable injury, including travel expenses, pharmaceutical expenses, and medical treatment after he submits an itemized statement to Defendant in accordance with Commission procedure.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following: *Page 9 
 AWARD
1. Plaintiff-Employee's claim for benefits related to his left shoulder is GRANTED.
2. Defendant shall authorize and pay for such medical care as is reasonably required as a result of Plaintiff's compensable injury by accident to affect a cure, give relief, or lessen Plaintiff's disability.
3. Defendant shall reimburse Plaintiff for any expenses incurred as result of his compensable injury, including travel expenses, pharmaceutical expenses, and medical treatment after he submits an itemized statement to Defendant in accordance with Commission procedure.
4. Defendant shall pay the costs of this action.
This the ___ day of April 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1